IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAYVON WILLIAMSON,                         )
                                           )
            Plaintiff,                     )
                                           )
     v.                                    )  Civil Action No. 15-742
                                           )
CAROLYN W. COLVIN, ACTING                  )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
            Defendant.                     )

O R D E R

AND NOW, this 14th day of July, 2016, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Acting Commissioner of Social Security's final decision, denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence,

or reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] In his brief, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (i) failing to include adequate social functioning limitations in Plaintiff's residual functional capacity assessment ("RFC"); and (ii) failing to resolve a conflict regarding a job which the Vocational Expert ("VE") testified comports with the ALJ's RFC. The Court disagrees and finds that substantial evidence supports the ALJ's RFC as well as her ultimate determination of Plaintiff's non-disability.

First, the Court finds no merit in Plaintiff's contention that the ALJ improperly disregarded the need to include sufficiently detailed limitations to address his moderately impaired social functioning when formulating Plaintiff's RFC. In support of this argument—although Plaintiff admits that the ALJ included, among other things, a limitation specifying "working with things and not people"—Plaintiff argues that this limitation is simply "too vague" for the Court to find that substantial evidence supports the RFC. The Court finds, however, that the ALJ properly accounted for any social limitations resulting from Plaintiff's impairments, to the extent that they are established by the record, in determining the RFC.

In fact, the ALJ found at Steps Two and Three of the evaluative process that, although Plaintiff does not have an impairment or combination of impairments that meet the severity of one of the listed impairments, Plaintiff's social functioning is only "moderately impaired." (R. 21-23). The ALJ also clarified at that stage of her analysis that such impairment is "not to the point that he cannot sustain social interactions appropriate for the workplace." (R. 22). The ALJ then reviewed and discussed, at great length, the relevant evidence in the record, including Plaintiff's own testimony, his activities of daily living and the medical evidence, and determined that, although Plaintiff "may suffer from some limitations due to a combination of impairments, the claimant's testimony is not credible to the extent that it is construed to mean that his limitations are so severe that he cannot engage in any work activity." (R. 25). The ALJ found this to be consistent "with the objective medical evidence, treatment regimen, and the evaluations of various examining and treating sources." (R. 25). The ALJ further stated that Plaintiff's "credibility is undercut by a pattern of evasive statements, vague responses and inconsistencies," and thus assigned little credibility to Plaintiff's statements, and she noted that "records or medical opinions which appear to be based primarily on [Plaintiff's] self-reported symptoms and limitations must be considered equally suspect and therefore subject to greater scrutiny." (R. 26).

In reaching her conclusions, the ALJ also considered the various medical opinions in the record, including that of consultative examiner Stephen Perconte, Ph.D., who, as she noted, indicated that Plaintiff "was uncooperative, appeared to be malingering and was unwilling to participate." (R. 26, 213-25). On the other hand, while Plaintiff's treating physician, Maajid Ekkiswala, M.D., opined that Plaintiff would be limited in several areas of mental functioning, the ALJ explained that the form filled out by the doctor "contains no accompanying clinical findings, narrative report, or adequate explanation and affords little opportunity to determine

whether such conclusions are based on medically recognized objective diagnostic techniques." (R. 27). The Court notes that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). In this instance, Dr. Ekkiswala's opinions consist largely of check-box forms which largely include blanks to check or fill in and options to circle. (R. 238-45, 368-71).

The ALJ further explained that the state agency medical consultants' determinations "that clinical findings fail to support significant functional limitations preclusive of all substantial gainful activity are substantiated by the record as a whole." (R. 27). Accordingly, the ALJ specified that she assigned great weight to the opinion of the state agency consultant in forming her RFC, although she explained that she actually gave a more restrictive RFC than that postulated by the state agency. (R. 27). Therefore, after careful consideration, the ALJ noted that she "resolved all doubt in [Plaintiff's] favor" and limited him to unskilled entry level work (which is comprised of jobs that "ordinarily involve dealing primarily with objects, rather than data or people," see SSR 85-15, 1985 WL 56857, at *4 (1985)), working with things and not people, in a stable work environment where work place and work process remain generally the same from day to day, with decision-making using concrete variables within standardized situations, with no production rate paced work and work that involves taking instructions, and which does not involve a response except to voice understanding or request clarification. (R. 23, 27).

Accordingly, the Court finds that the ALJ carefully reviewed the record to arrive at a well-reasoned RFC in her decision. Further, the Court notes that Plaintiff has cited no particular evidence in the record, nor has he cited any case law, to support his argument that the ALJ needed to include greater specificity than she did regarding Plaintiff's social functioning limitations, which she deemed to be "moderate." Rather, the Court finds that the record and the ALJ's analysis thereof does not demonstrate that more specific limitations as to Plaintiff's interactions with others—other than that which the ALJ provided—was required. Moreover, the Court finds that the ALJ properly analyzed the evidence of record and, resolving all doubt in Plaintiff's favor, ultimately determined that Plaintiff had certain social functioning limitations which she included when formulating an appropriate RFC.

Second, Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff could perform jobs existing in significant numbers in the national economy because the ALJ failed to resolve a conflict between Plaintiff's RFC and one of the jobs that the VE provided during testimony. Specifically, Plaintiff contends that the Dictionary of Occupational Titles ("DOT") classification of the assembler job—which the VE provided as an example of a job that an individual such as Plaintiff could perform—is incompatible with the ALJ's limitation excluding production rate paced work. Regardless, the VE also testified that an individual with Plaintiff's RFC could perform one of over 150,000 marker jobs, and one of over 300,000 sorter jobs, that exist in the national economy. (R. 28, 61). To meet her burden at this last step of the evaluative process, however, the Commissioner is only required to "identify at least one occupation that exists in significant numbers in the national economy that a claimant can perform." Kelley v. Astrue, 2011 WL 6310467, at *14 (D. Del. Dec. 16, 2011). Therefore, even if the Court were to find that the assembler job is incompatible with Plaintiff's RFC, this would

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

---

constitute only harmless error and would not warrant remand because the VE also identified two other jobs which exist in significant numbers in the national economy. See, e.g., Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding that 200 jobs in a region constitutes a significant number, satisfying the Commissioner's burden).

In sum, the ALJ thoroughly addressed the relevant evidence in the record and formulated an appropriate RFC, based on the impairments and accompanying limitations that are supported by such evidence. After careful review of the record, the Court finds that there is substantial evidence to support the ALJ's RFC. The Court finds, further, that substantial evidence supports the ALJ's finding that Plaintiff can perform jobs which exist in significant numbers in the national economy. Accordingly, the Court affirms.